IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

BERNICE PACHECO,

     Plaintiff,

vs.

SECURITY FINANCE CORP. OF
NEW MEXICO,

     Defendant.

No. 06cv117 PK/RHS

---

MEMORANDUM OPINION AND ORDER

---

THIS MATTER comes on for consideration of Defendant's objections to the Magistrate's Report and Recommendation regarding the Defendant's Motion to Compel Arbitration filed June 19, 2006. Doc. 15. The court, having reviewed the objections and the response, finds that the objections are well taken and should be sustained, and that Defendant's Motion to Compel Arbitration filed April 4, 2006 (Doc. 7), should be granted.

(1) <u>Background.</u>  On December 27, 2005, Plaintiff, Bernice Pacheco ("employee"), filed a complaint against her former employer, Defendant, Security Finance Corporation of New Mexico ("employer"). Thereafter, the complaint was removed to this court. It alleges violations of Title VII and the ADEA, and also asserts various state law causes of action.

On April 4, 2006, the employer filed a motion to compel arbitration. contending that an employment agreement requires the employee to arbitrate the claims contained within her complaint.  The employee counters that the arbitration provision contained within the agreement is unenforceable because: (1) the employer's promise to arbitrate is illusory for various reasons, and (2) the employer failed to request arbitration within the prescribed time limit contained within the arbitration provision itself.  Both parties agree that if the arbitration provision is valid and enforceable, it covers the employee's claims.[1]

On June 7, 2006, the magistrate judge, recommended that employer's motion to compel arbitration be denied.  He based this recommendation on his finding that "certain provisions of the Employment Agreement do conflict and create ambiguity regarding whether Defendant promised to be bound by the arbitration agreement . . . ." Because of this ambiguity, the magistrate judge held that the employer's promise to arbitrate was illusory and therefore the arbitration provision was unenforceable.

(2) Employer's Objections and Standard of Review.  The employer argues that the employment agreement (a) does not contain conflicting or ambiguous provisions

---

[1]  Section 14(A)(1), entitled "Claims and Disputes Subject to Arbitration," specifically lists the following as subject to arbitration:

> Any claim regarding, or related to, violations of federal, state or local laws and statutes prohibiting employment discrimination and/or retaliation based on race, sex, national origin, age disability, religion and veteran's status.

or promises, (b) is not subject to unilateral modification or revocation, and (c) does not unlawfully favor the employer's interests over those of its employees. Because the employer objects to the magistrate judge's ultimate and subsidiary reasoning contained in the report and recommendation, this court must make a de novo determination. 28 U.S.C. § 636(b)(1)(B).

(3) <u>Analysis.</u>

The Federal Arbitration Act ("FAA"), enacted in 1925, "compels judicial enforcement of a wide range of written arbitration agreements." <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 111 (2001). Arbitration agreements contained within employment contracts between an employee and his or her employer fall within the FAA's wide coverage. <u>Id.</u> at 119.

a. Arbitrability

Before the court addresses the merits of the employee's substantive attack on the arbitration clause at issue, the court must decide which, if any, of the employee's contentions are to be resolved by the court, rather than an arbitrator. Motions to compel arbitration are covered by § 4 of the FAA, which provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.  This particular provision requires judicial resolution of issues that go

to the "making" of an agreement for arbitration.  <u>Prima Paint Corp. v. Flood &</u> <u>Conklin Mfg.</u>, 388 U.S. 395, 403-04 (1967).   Thus, the Court has drawn a rather clear distinction between "questions of arbitrability," which are to be decided by courts, and "procedural disputes that grow out of the dispute and bear on its final disposition," which are to be decided by an arbitrator in the first instance.  <u>See</u> <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 84 (2002).  As a result, issues regarding "*time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate . . . are for the arbitrators to decide." <u>Id.</u> at 85 (emphasis in original).

The employee makes two primary arguments in opposition to the motion to compel arbitration: (1) the arbitration clause at issue is unenforceable because employer's promise to arbitrate is illusory and unsupported by consideration; and (2) the employer failed to comply with the mandatory time deadlines contained within the arbitration clause itself and is therefore barred from now seeking arbitration. This court may address the first of the two arguments, but the second must be submitted to an arbitrator for resolution.

The first argument, that the arbitration clause is unenforceable as illusory and unsupported by consideration, clearly calls into question the viability of the arbitration clause itself.  Whether an arbitration clause is founded upon an illusory promise or is void of consideration implicates the "making" of the agreement to arbitrate, and is exactly the type of issue that courts have been called on to resolve.

-4-

See id. at 84 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); Dumais v. American Golf Corp., 299 F.3d 1216, 1218 (10th Cir. 2002).

On the other hand, the employee's second primary argument, that the employer failed to abide by the time limitation contained within the arbitration clause itself, is of a procedural nature and therefore must be decided by an arbitrator in the first instance. In Howsam, a former client of Dean Witter's, Karen Howsam, claimed that the investment firm had provided her faulty investment advice regarding four limited partnerships. 537 U.S. at 81-82. Howsam agreed to arbitrate her claim before the NASD. Id. at 82. Dean Witter, however, sought a declaration in federal court that Howsam's claim was ineligible for arbitration because Howsam had failed to comply with an NASD provision stating that no dispute "shall be eligible for submission . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." Id. (citing NASD Code § 10304). The Court, therefore, had to decide whether a judge or an arbitrator was the appropriate decisionmaker to determine Howsam's compliance, or lack thereof, with the NASD time limit. The Court held that an arbitrator should decide the time limit issue, concluding that "the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called 'questions of arbitrability.'" See id. at 85.

Although the time limit in Howsam was imposed by the arbitrator's rules, and the time limit here is self-imposed by the parties, this is a distinction without a

difference.  See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d

Cir. 1991) ("[A]ny limitations defense-whether stemming from the arbitration

agreement, arbitration association rule, or state statute-is an issue to be addressed by

the arbitrators.") (emphasis in original).  In fact, the First Circuit has held, relying

on Howsam, that the issue of compliance with contractual time limits contained in

an arbitration clause must be addressed by an arbitrator first.  Marie v. Allied Home

Mortgage Corp., 402 F.3d 1, 11 (1st Cir. 2005).  The court also held that an employer

does not waive its right to arbitration by participating in EEOC proceedings or

raising an arbitration defense during those proceedings.  Id. at 16.

In Howsam, the Supreme Court suggests that parties may alter by agreement

the usual presumption that procedural issues are to be resolved by the arbitrator first.

See 537 U.S. at 85-86 ("[I]n the absence of an agreement to the contrary . . . issues

of procedural arbitrability . . . are for the arbitrators . . . .").  There is a complete

absence, however, of any language in the employment agreement here that would

even arguably overcome the presumption that arbitrators decide issues of procedural

arbitrability.  Thus, the court will not address the employee's time limitation

argument–that is for the arbitrator.

b. Enforceability

Next, the court considers the employee's argument that the arbitration clause

at issue is unenforceable because conflicting paragraphs within the employment

agreement render the employer's promise to arbitrate illusory and the agreement is

otherwise devoid of a mutual promise or consideration.  The magistrate judge agreed that conflicting provisions within the agreement, specifically paragraphs 14 and 21, rendered the employer's promise to arbitrate illusory.  The employer argues in response that both its promise to arbitrate certain claims and its granting the employee at-will employment were adequate consideration for the promise to arbitrate.  Additionally, the employer argues that its promise to arbitrate was not illusory because it could not unilaterally alter the agreement and the agreement's provisions are not in fact conflicting.  This court agrees.

General state law principles that govern the formation of contracts, in this case those of New Mexico, govern the question of whether a valid agreement to arbitrate has been reached.  See 9 U.S.C. § 2 (stating that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996).  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  Doctor's Associates, 517 U.S. at  687.  Additionally, the usual presumption in favor of arbitration falls away when the parties disagree whether there was a valid and enforceable arbitration agreement in the first place.  Dumais, 299 F.3d at 1220.

In order for a contract to be legally enforceable in New Mexico, there must be evidence supporting the existence of an offer, acceptance, consideration, and mutual

assent.  <u>Garcia v. Middle Rio Grande Conservancy Dist.</u>, 918 P.2d 7, 10 (N.M. 1996).  "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do."  <u>Heye v. American Golf Corp.</u>, 80 P.3d 495, 499 (N.M. Ct. App. 2003). Moreover, each promise must be binding and non-illusory.  <u>Id.</u>  An illusory promise occurs where "[a] purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror . . . ."  <u>Bd. of Educ. v. James Hamilton Constr. Co.</u>, 891 P.2d 556, 561 (N.M. Ct. App. 1994).

Section 14 of the employment agreement at issue is entitled "Arbitration" and begins, "Employee AND THE COMPANY AGREE TO ARBITRATE ANY CLAIMS AND DISPUTES DESCRIBED IN SUBPARAGRAPH "A" BELOW."  Doc. 8, Ex. A.  Subparagraph A of section 14 lists claims and disputes subject to arbitration, subparagraph B lists claims and disputes not subject to arbitration, and subparagraph C provides for the procedure to be used in the case that arbitration is warranted. Subparagraph D, entitled "Miscellaneous Provisions," contains a subsection which provides:

> This is the complete agreement of the parties on the subject of arbitration of claims and disputes.  This Agreement . . . can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement.

Doc. 8, Ex. A, § 14(d)(3).  Finally, section 21 of the agreement, entitled "Conflicts," states, "In the event of any conflict with the Company's Personnel Manual, this

Agreement shall be construed in a manner consistent and in harmony with all personnel policies generally applicable to the employees of the Company."

The magistrate judge determined that the employer's promise to arbitrate certain claims was illusory because it could unilaterally renege on its promise. The magistrate judge based this decision on his conclusion that "the language of paragraph 21 (conflicts provision), in effect, permits Defendant to unilaterally modify the terms of the arbitration provision by modifying the terms of the Personnel Manual." The court respectfully disagrees.

First, section 14 of the Agreement clearly contemplates that both parties are bound to arbitrate certain claims. While the employee may be correct that the types of claims in which section 14 mandates arbitration are claims which will typically be brought against, rather than by, the employer, that does not change the fact that the employer, like the employee, has agreed to forego litigation of those claims in court. Moreover, there is no guarantee that the employer will fare any better in an arbitral forum than it will in a judicial one. See Oblix, Inc. v. Winiecki, 374 F.3d 488, 491 (7th Cir. 2004) ("[G]iving employees the same terms and forum (the AAA) that a firm deems satisfactory for commercial dispute resolution is not suspect. Employees fare well in arbitration with their employers-better by some standards than employees who litigate . . . .").

Second, section 14 makes very clear that the parties' mutual agreement to arbitrate certain claims may not be revoked or modified without written consent of

both parties.  Therefore, the choice to arbitrate certain claims was not left entirely to either party.  Rather, both clearly agreed that if a claim arose and that claim was included on the list of claims to be arbitrated, arbitration would occur in the absence of a revocation or modification agreed to by both parties.

Finally, section 21 does not render illusory the parties' mutual agreement to arbitrate certain claims.  Looking to the plain language of section 21, it can most aptly be described as an interpretive tool to be utilized in situations in which a conflict arises between the employment agreement and other personnel policies.  No such situation has been suggested.  Were the employer to attempt to utilize language contained in a personnel policy to modify or revoke the mutual agreement to arbitrate, it would be contrary to the integration clause in section 14.  Accordingly, the agreement to arbitrate certain claims is enforceable because it is supported by mutual consideration and is non-illusory.[2]

In arguing that the employer's  promise to arbitrate is illusory, the employee relies heavily on Dumais v. American Golf Corp., 299 F.3d 1216 (10th Cir. 2002).  In Dumais, an employee handbook, whose terms employees were bound by, contained conflicting provisions concerning American Golf's ability to modify the

---

[2]  Because the court holds that the agreement to arbitrate is supported by consideration in the form of the parties' mutual relinquishment of the right to bring certain claims in a judicial forum, the court need not address the employer's further contention that granting the employee at-will employment was consideration enough to uphold the arbitration clause.

-10-

handbook's terms. See id. at 1218. One provision allowed American Golf to modify any provisions of the handbook except those granting employees at-will status and the provision binding American Golf and its employees to arbitration. Id. A second provision allowed American Golf to modify any provisions of the handbook except those granting employees at-will status. Id. The court construed the handbook's ambiguous terms against the drafter, American Golf, and determined that the handbook allowed it to modify or rescind its agreement to arbitrate at any time. See id. at 1219-20. Thus, American Golf's promise to arbitrate was illusory and unenforceable. Id. at 1220.

Here, unlike in Dumais, there are no ambiguities, which the court need construe against the employer, contained in the employment agreement regarding the parties' obligation to arbitrate. Instead, there is an arbitration provision with an integration clause, and another provision that may be used as a tool of construction, but in no way calls into question the clarity of the arbitration provision or opens an avenue by the which the employer may unilaterally avoid binding arbitration. Accordingly, Dumais is factually distinguishable from this case and inapposite.

The other cases the employee relies upon in arguing that the employer's promise to arbitrate was illusory are similarly distinguishable. In Piano v. Premier Distr. Co., 107 P.3d 11 (N.M. Ct. App. 2005), the arbitration agreement in question could be "changed, altered, revised or modified" unilaterally by the owner of the company, rather than by both parties to the agreement. Id. at 13. Heye v. American

Golf Corp., 800 P.3d 495 (N.M. Ct. App. 2003), involved a situation in which an employer expressly reserved the right to amend or rescind *all* terms contained within it employment agreement, except employment at-will provisions. Id. at 497. And in Salazar v. Citadel Commc'ns Corp., 90 P.3d 466 (N.M. 2004), the arbitration agreement was "annexed" to an employee handbook whose terms, except those with regard to at-will employment, could be unilaterally modified. Id. at 468. None of these cases describe the situation here. In fact, in Sisneros v. Citadel Broadcasting Co., –P.3d– No. 24,917, 2006 WL 2545926, at *9-10 (N.M. Ct. App. June 21, 2006), the court determined that an arbitration provision was not illusory where the employer was bound to arbitrate upon the accrual of the employee's claim–here, the employer is bound to arbitrate by virtue of the provisions discussed above.

   c. Unconscionability

   The employee also argues that the arbitration agreement is unenforceable because it is unconscionable. In New Mexico, a contract may be deemed to be substantively unconscionable when its terms are unreasonably favorable to one of the parties. Monette v. Tinsley, 975 P.2d 361, 365 (N.M. Ct. App. 1999). "Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair," and thus the doctrine only negates an otherwise valid contractual term where it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other . . . ." Guthmann v. LaVida Llena, 709 P.2d 675, 679, 680 (N.M. 1985). The

-12-

arbitration terms in the employment agreement in this case, however, cannot, in any sense of the term, be described as "grossly unfair."  Both parties are required to arbitrate certain categories of cases, no evidence suggests any party will fare any better in arbitration than in court, and the agreement also provides that the employer shall pay "all fees and expenses of the arbitration."

The employee also maintains that the agreement is unconscionable because it contains provisions barring claims where a party did not request arbitration within 90 days, and provides that where a party institutes a civil action other than arbitration on a claim subject to arbitration, the responding party shall be entitled to have the action dismissed and recover costs and attorney's fees.  Doc. 8, Ex. A, § 14(C)(1) & (D)(2).  These provisions apply to employee and employer alike; indeed, the employee argues that the limitation provision barred the employer from seeking arbitration.  See Webb v. Investacorp, Inc., 89 F.3d 252 (5th Cir. 1996) ("[T]he arbitration clauses themselves are not one-sided in the sense that they cause [plaintiffs] to relinquish their access to the courts because, by the same provisions, [defendant] has relinquished the same right.")  Moreover, the agreement's terms adequately provide the employee access to an arbitral forum.  See Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1234 (10th Cir. 1999) ("[A]n arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum.").  This court is unpersuaded that terms designed to secure resort to the arbitration agreement

-13-

(given covered claims) somehow render the agreement unconscionable.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that Defendant's Objections to the Magistrate's Report and Recommendation Regarding the Defendant's Motion to Compel Arbitration filed June 19, 2006, (Doc. 15), are sustained.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Arbitration filed April 4, 2006 (Doc. 7), is granted.

DATED this 20th day of September 2006, at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation

Counsel:

Jim B. Foy, Silver City, New Mexico, for Plaintiff.

Virginia Anderman, Miller Stratvert P.A., for Defendant.

-14-